**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



C. Kathryn Preston
United States Bankruptcy Judge

**Dated: March 7, 2018**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**COLUMBUS DIVISION**

| | |
|---|---|
| **In re:** | **Case No.: 17-55200** |
| **Andrew Scott Graham,** | **Chapter 7** |
| Debtor(s). | **Judge C. Kathryn Preston** |
| | **SSN: xxx-xx-0206** |

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B), (F), AND (M) (DOCKET NO. 23)**

THIS CAUSE came before the Court upon the Trustee's *Motion To Sell Real Property Free And Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(b), (f), and (m)* (Docket No. 23) (the "Motion to Sell"), by which the Trustee seeks authority to sell, free and clear of all liens, encumbrances, and interests, certain real property owned by Debtor, commonly known as 10955 Kilburn Lane, Cambridge, OH 43725, and more particularly described as:

> Land referred to in this commitment is described as all that certain property situated in the county of Guernsey, and state of OH and being described in a deed dated 08/12/2000 and recorded 08/24/2000 in Book / Page:252 / 737 among the land records of the county and state set forth above, and referenced as follows:

ALL THE FOLLOWING REAL PROPERTY:

SITUATED IN THE COUNTY OF GUERNSEY, IN THE TOWNSHIP OF CAMBRIDGE, IN THE STATE OF OHIO, BOUNDED AND DESCRIBED AS FOLLOWS:

KNOWN AS AND BEING A PART OF MILITARY LOT 7, TOWNSHIP 1, RANGE 3 CONTAINING 0.884 ACRES MORE OR LESS, AND FURTHER DESCRIBED IN ATTACHED EXHIBIT "A".

SITUATED IN THE COUNTY OF GUERNSEY IN THE STATE OF OHIO AND IN THE TOWNSHIP OF CAMBRIDGE TO-WIT: AND KNOWN AS AND BEING A PART OF MILITARYLOT 7, TOWNSHIP 1, RANGE 3 AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING FOR A DESCRIPTION AT AN IRON PIN FOUND AT THE NORTHEAST CORNEROF THE SAID LOT 7; THENCE SOUTH 0 DEGREES 33' 16" WEST, ALONG THE EAST LINE OF THE SAID LOT 7, FOR 1566.60 FEET TO AN IRON PIN SET, THIS BEING THE TRUCE PLACE OF BEGINNING OF THE PARCEL HEREIN DESCRIBED; THENCE CONTINUING SOUTH 0 DEGREES 33' 16" WEST FOR 92.77 FEET TO AN IRON PIN SET; THENCE CONTINUING SOUTH 0 DEGREES 33' 16" WEST FOR 35 FEET TO AN IRON PIN SET 11 FEET MORE OR LESS SOUTH OF THE CENTER OF TR4391; THENCE NORTH 88 DEGREES 57' 04" WEST ALONG THE SOUTH LINE OF THE GRANTOR LANDS FOR 260.45 FEET TO AN IRON PIN SET NEAR THE CENTER OF TR 4391; THENCE NORTH 0 DEGREES 15' 17" WEST FOR 35 FEET TO AN IRON PIN SET; THENCE CONTINUING NORTH 0 DEGREES 15' 17" WEST FOR 35 FEET TO AN IRON PIN SET; THENCE SOUTH 80 DEGREES 31' 05" EAST FOR 256.02 FEET TO THE PLACE OF BEGINNING, CONTAINING 0.884 OF AN ACRE. THE BEARINGS ARE MAGNETIC AND ARE FOR THE PURPOSE OF CALCULATING ANGLES ONLY; THE IRON PINS SET AR THAT OF A REINFORCING BAR. SUBJECT TO ALL LEGAL HIGHWAYS, RIGHTS AND EASEMENTS OF RECORD.

PARCEL ID: 04-00304.000. (the "Property")

For the reasons set forth in the Motion to Sell, the Trustee has demonstrated that the sale of the Property on the terms contained in the Motion to Sell is in the best interests of the Debtor's estate. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Except for the relief requested in Paragraph #21 and the relief requested in the last sentence of Paragraph # 23, the Motion to Sell is **GRANTED** and the Trustee is authorized to sell the Property at auction free and clear of all liens, claims, encumbrances, and interests, pursuant to 363(b), (f) and (m), subject to the terms and conditions herein. All liens shall be transferred to the sale proceeds in order of their priority.

2. Except as provided in the sale agreement or other applicable sale documents required by the Trustee (the "Sale Documents"), the Property shall be transferred to the Buyer "as is" and free and clear of all encumbrances.

3. The creation and use by Trustee of a Carve-Out Fund, as defined and described below, is hereby approved.

4. The Trustee is authorized to sell the Property by auction using the following procedures:

   a. **The Auction Date**: The first "Auction Date" shall be set upon entry of this order. The first "Auction Date" shall be a date selected by Auction.com or such other auctioneer whose employment is approved by the Court ("ADC") that is at least 21 days following the entry of an order by the Bankruptcy Court approving the retention of ADC; provided however that the Auction Date may be adjourned from time to time by posting a notice of adjournment on ADC's website.

   b. **Registration Process**: Each party wishing to participate in the Auction shall submit an on-line registration form on the website established by ADC for the Auction to qualify as a bidder. The registration form shall, among other things: (i) contain such information as reasonably requested by ADC to identify the potential bidder; and (ii) require a credit card authorization for payment of a deposit (in an amount to be determined by ADC in consultation with the Trustee), which deposit will either (a) not be charged, if the bidder is not the winning bidder, (b) not be charged, if the bidder is the winning bidder and timely consummates the sale pursuant to the Sale Documents, or (c) may be charged, if the bidder is the winning bidder but fails to timely consummate the sale, including fails to execute the Sale Documents promptly following completion of the Auction. The Secured

  Creditor shall be deemed to be a qualified bidder at the Auction and shall not be required to submit a registration form or deposit. ADC, in consultation with the Trustee, shall have the right to disqualify any potential bidder as a qualified bidder if such bidder fails to complete the registration process.

c. **Bid Procedure**: Prior to the commencement of the first Auction Date, the Secured Creditor shall provide a written notice (the "Secured Creditor Notice") to the Trustee and ADC of the amount of its credit bid pursuant to Section 363(k) of the Bankruptcy Code. The Secured Creditor Notice shall also include the following information: (i) a minimum purchase price for the sale of the Property acceptable to the Secured Creditor (the "Reserve Price"); (ii) the Secured Creditor's initial credit bid amount to serve as the opening bid for the Auction (the "Opening Bid"), which may be less than the Reserve Price; and (iii) the bidding increment(s) ("Bidding Increments") for each round of bidding after the Opening Bid.[1] The Bidding Increments may be adjusted upwards or downwards during the Auction for each bidding round in the discretion of ADC to facilitate the most competitive bidding. The Secured Creditor Notice shall be the sole authorization required by the Trustee and ADC to consider the submission of the Opening Bid and any competing bid(s) by the Secured Creditor pursuant to Section 363(k) of the Bankruptcy Code.[2]

d. **Winning Bid Amount**: The "Winning Bid Amount" shall be the highest or otherwise best bid selected by the Trustee and ADC, consistent with the Secured Creditor Notice, during the Auction.

e. **Buyer's Premium**: In addition to the Winning Bid Amount, the winning bidder shall pay a "Buyer's Premium" equal to the greater of $2,500.00 or five (5%) of the Winning Bid Amount, which shall be paid at closing directly to ADC as its commission (the "Buyer's Premium"). ADC shall not be entitled to any other compensation. No Buyer's Premium shall be paid when the highest bid is the Secured Creditor's credit bid. ADC shall not split or otherwise share the Buyer's Premium with any other person or

---

[1] If not otherwise set forth in the Secured Creditor Notice, the Reserve Price, the Opening Bid, and the initial Bidding Increments may be established by ADC in consultation with the Trustee and the Secured Creditor; provided however, that ADC may adjust Bidding Increments upwards or downwards during the Auction in its discretion.

[2] Without limiting the foregoing, ADC shall be authorized to increase Bidding Increments automatically during the Auction on behalf of the Secured Creditor to the extent of the authorization provided for in the Secured Creditor Notice.

4

       entity. The estate shall not be responsible or obligated to pay any compensation to ADC.

f. **Total Purchase Price:** The actual total purchase price ("Total Purchase Price") at closing will be equal to the Winning Bid Amount plus the Buyer's Premium.

g. **Listing Agent's Commission**: The Listing Agent shall receive up to 3% of the Winning Bid Amount for any sale that closes to a third party buyer (the "Commission"). No Commission shall be paid when the highest bid is the Secured Creditor's credit bid. The Listing Agent shall not be entitled to any other compensation. The Listing Agent shall not split or otherwise share the Commission with any other person or entity, except that if the buyer is represented by a real estate agent, the Listing Agent and buyer's real estate agent may split or share the Commission by agreement. The Secured Creditor shall pay the Commission when earned and the estate shall not be responsible or obligated to pay any compensation to the Listing Agent.

h. **Carve-Out Fund**: (1) If the Winning Bid Amount is less than the allowed amounts owing to the Secured Creditor, then the Trustee will receive (a) 5% of the Winning Bid Amount plus the Listing Agent's Commission, or (b) 5% of the Reserve, in the event the Secured Creditor enters the winning bid (collectively, the "Standard Carve-Out"); provided however that the Standard Carve-Out shall never be less than $7,500.00, exclusive of the Listing Agent's Commission, nor shall it exceed $50,000.00, exclusive of the Listing Agent's Commission; (2) if the Winning Bid Amount exceeds the amounts owing to the Secured Creditor, then the portion which exceeds the amounts owing to the Secured Creditor and any valid and substantiated junior secured lienholder (the "Surplus") shall be retained by the Trustee and no carve-out shall be paid; however, if the Surplus is less than the Standard Carve-Out set out above by any amount ("Short Surplus Amount") then the Secured Creditor shall pay to the Trustee an amount equal to the Short Surplus Amount; and (3) the Trustee shall be reimbursed by the Secured Creditor for any liability insurance expenses incurred by the Trustee.

i. **Back-Up Bidder**: ADC shall be authorized, but not required, to accept the second highest bid submitted during the Auction as a "back-up" bid in the event that the winning bidder fails to consummate the sale transaction.

5

      j.    **Sale Documents**: Promptly following the closing of the Auction, the winning bidder shall execute a sale agreement or other applicable sale documents as required by the Trustee (the "Sale Documents").

5.    The Trustee's acceptance of a "back-up" bid and proceeding to consummate a transaction with the "back-up" bidder shall be without prejudice to any claim of the Trustee against the winning bidder for failing to proceed.

6.    If the reserve is not met by the end of the first Auction, then ADC will advertise a second Auction to commence one week later. If the reserve price is not met at the second Auction, ADC will advertise and commence a third Auction one week later. If the reserve price is not met at the third Auction, the Secured Creditor may then utilize its right to purchase the Property by credit bid.

7.    To the extent applicable in any sale, the Secured Creditor shall pay at closing (1) all outstanding real estate taxes, including any prorated amounts due for the current tax year; (2) if applicable, the lesser of any HOA fees accrued post-petition or the equivalent to twelve months' assessments; and (3) all closing costs excluding professional fees.

8.    This Court shall retain jurisdiction to implement and enforce the provisions of this Order.

9.    The Trustee may close this transaction and make other necessary decisions according to local customs and pro-rations without further Order from the Court, and steps may be taken as necessary to close this matter, equivalent to those actions private sellers may take at their own closing.

**IT IS SO ORDERED.**

Default list plus additional parties:

Nationstar Mortgage, LLC,
c/o Matthew Murtland, Esq.
Shapiro, Van Ess, Phillips & Barragate, LLP
4805 Montgomery Rd.
Ste. 320
Cincinnati, OH 45212

Auction.com, LLC,
1 Mauchly,
Irvine, CA 92618

Lori Dickens
Carol Goff & Associates
648 Wheeling Ave.
Cambridge, OH 43725

# # #